[Civ. No. 32405.   Second Dist., Div. Two.   Feb. 6, 1969.]

SHERRILL D. LUKE, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Marks & Schneider for Plaintiff and Appellant.

Harold W. Kennedy and John D. Maharg, County Counsel, Donald K. Byrne, Assistant County Counsel, and Ronald D. Aubert, Deputy County Counsel, for Defendants and Respondents.

FLEMING, J.—Petitioner Luke appeals a judgment denying a writ of mandate to compel the County of Los Angeles to pay him $750 in compliance with an order of the superior court. We hold the writ should issue.

Luke, an attorney at law appointed by the superior court in October 1966 to represent an indigent in a narcotic commitment proceeding, sought compensation for his services

under Penal Code, section 987a, and was awarded a fee of $750 by the court. The county declined to pay on the ground that since the services were not rendered in a criminal proceeding section 987a did not apply. In December 1966 the court amended its order to declare that the appointment had resulted from a conflict of interest between the indigent and the public defender, and to provide for payment of the fee under section 3105 of the Welfare and Institutions Code. The county still refused to pay, taking the position that Luke was not entitled to compensation under either statute.

Luke argues he is entitled to be paid for his services as appointed counsel, either under section 987a of the Penal Code or under section 3105 of the Welfare and Institutions Code. The county argues that authorization to compensate appointed counsel must be explicit, that a narcotic commitment is a civil proceeding to which section 987a does not apply, that section 3105 of the Welfare and Institutions Code did not expressly authorize compensation for appointed counsel. From these premises the county concludes that the court lacked authority to compensate counsel for services pursuant to his appointment.

In 1966 section 3105 of the Welfare and Institutions Code in relevant part read: ". . . The person sought to be committed shall, at all stages of the proceeding, have the right to be represented by counsel . . . If he is unable financially to employ counsel, the court shall, if requested, appoint counsel for him." While this section provided for appointment of counsel by the court, it said nothing about who was to stand the cost.[1] Since by definition the subject of the commitment is indigent and unable to employ counsel, the cost of representation must be borne either by appointed counsel or by the entity responsible for the court's financial support (in this case, the county). The latter argues that because a specific liability had not been imposed on it by the statute which authorized the appointment, the cost of representation must fall on counsel himself.

In an era not too far distant such a result would have been the inevitable outcome of the appointment. Respondent county correctly interprets earlier cases as holding that when com-

[1]In 1967 the provision for appointment of counsel was placed in section 3104 and amended to read: ". . . If he is financially unable to employ counsel the judge shall appoint counsel to represent him, and in a county where there is no public defender or where the judge finds that the public defender has properly refused to represent the person, the judge shall fix compensation to be paid by the county for such services. . . ."

pensation has not been specifically provided by statute the burden of the representation must be carried by appointed counsel. That was the gist of *Rowe* v. *Yuba County,* 17 Cal. 61; *Lamont* v. *Solano County,* 49 Cal. 158; and opinions such as *Hill* v. *Superior Court,* 46 Cal.2d 169 [293 P.2d 10], which follow *Rowe's* reasoning. In *Rowe* the court held that petitioner, appointed as counsel at the request of a defendant in a felony case, could not in the absence of statutory authorization charge the county for his services. In *Lamont* the court refused to reimburse appointed counsel in a murder case, either for professional services or for moneys expended in the conduct of the defense.

But the last two decades have effected radical changes in the practice of compensation for appointed counsel, changes which reflect equally radical changes in the organization of the bar.[2] Such statutes as Penal Code sections 987a and 1241, and Welfare and Institutions Code sections 634, 5503, 5565, and 5631, have articulated a comprehensive policy in favor of compensation at public expense for appointed counsel. Therefore, a court today, faced with a request to compensate appointed counsel, finds itself in a different position from that in which a court sat in earlier years. For the court in *Rowe* or *Lamont* to have ordered a fee for appointed counsel would have required the court itself to initiate and declare a policy of public compensation for appointed counsel before the Legislature had formulated a general policy in its favor. For a court today to award a fee to appointed counsel no longer requires the court to initiate a policy, for it is clear the Legislature has adopted a general policy in favor of compensation. The sole issue, therefore, is whether the general policy should be applied in the particular instance of a narcotic commitment proceeding and the county charged with the cost of the appointment.

The county argues that because the statute authorizing the appointment of counsel in this particular proceeding did not

---

[2]Former practices may be seen in the following comments of Field, C. J., in the *Rowe* case (17 Cal. 61, 63):

". . . Counsel are not considered at liberty to reject under circumstances of this character, the cause of the defenseless, because no provision for their compensation is made by law. The duty imposed in this way may, it is true, be carried to unreasonable length, so as to become exceedingly burdensome; but we have heard of no complaints of this character. It is usual for the Court to apportion the duty among the different members of the profession practicing before it so as to render it as light upon each as possible.''

An apportionment which was feasible in 1860 is no longer so today.

expressly provide for counsel fees, while other statutes governing comparable proceedings did so provide, the Legislature did not intend counsel in this proceeding to be compensated at public expense. Additionally, the county argues that the adoption of the 1967 amendment explicitly authorizing payment of compensation in this type of proceeding proves that the Legislature had not theretofore authorized the payment of compensation to appointed counsel. We do not, however, find these arguments controlling, for legislative action does not interpret itself and the county's arguments may be turned inside out with equal plausibility, since it can be argued that the Legislature thought it unnecessary to specify payment in each custodial proceeding when it had already adopted a general legislative policy for the compensation of appointed counsel in public offenses, and since it can be argued that the 1967 amendment merely made explicit what was already implicit, viz., that appointed counsel in all custodial proceedings are entitled to compensation. To make an intelligent choice between alternative statutory interpretations we must consider the operation of section 3105 in the light of the policy it was designed to serve.

The critical importance of the role played by counsel in adversary proceedings, long expounded in theory, has recently received concrete recognition in the form of a growing body of decisions and statutes establishing, explaining, and expanding the right to counsel. (See, e.g., *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811. 83 S.Ct. 814]; *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926].) Although the impetus for this growth arose from criminal cases, the similarity between the procedures and results of criminal cases and such involuntary civil commitment proceedings as juvenile, insanity, sexual psychopath, and narcotic addiction proceedings, has generated pressures to provide appointed, compensated counsel in the latter cases as well. (See, e.g., *In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; *In re Buros,* 249 Cal.App.2d 55 [57 Cal.Rptr. 124]; Welf. & Inst. Code, §§ 634, 679, 700, 3100 et seq., 6300 et seq., etc.)

Coincident with the expansion of the number of categories

in which representation by counsel is now required has been the growth of concern over the quality of such representation. (See, e.g., *Anders* v. *California*, 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396].) The complexities of modern society and modern legal practice have increasingly specialized the activities of lawyers and narrowed the area of a particular practitioner's effectiveness. Today law comprehends a myriad of different processes, and lawyers must necessarily specialize in only a few of them in order to achieve and maintain competency in their work. As a consequence their experience at the bar has become fragmented. No longer will it serve for a court to select a lawyer-bystander in the courtroom, since with the best of professional intentions the latter may only be qualified to furnish perfunctory and transitory representation, perhaps in a field of law in which he has little personal interest or current familiarity. Effective representation today requires counsel experienced in the particular field of law involved. (Cf. *Lucas* v. *Hamm*, 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; *People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].) Yet to acquire this experience and maintain an acceptable level of competency in a given field of the law demands continuous study, application, and practice. We think the days are past when a lawyer could be expected to do this solely as a public service. If society is to demand representation by counsel in an expanding variety of proceedings and to insist on a high level of competency in the performance of such representation, then counsel should be paid. Is it reasonable today to attach to a statute which provides for court-appointed counsel in a custodial proceeding an interpretation that appointed counsel will render his services for nothing?

We think not. The similarity of civil custodial proceedings to criminal proceedings and the comparable need of the subject for effective representation in both instances makes us reject the proposition that the Legislature intended to provide court-appointed counsel in two types of proceedings but compensate counsel at public expense in only one. We think the better reasoning infers that the Legislature intended court-appointed counsel to be compensated in all custodial proceedings of a serious nature, including narcotic commitment proceedings. On a closely related aspect of narcotic commitment proceedings—the obligation to furnish a free transcript to an indigent—the court in *People* v. *Victor*, 62 Cal.2d 280, 288-289 [42 Cal.Rptr. 199, 398 P.2d 391], required the county to furnish such a transcript, even though specific statutory

authorization for this expense extended only to criminal cases. A comparable ruling is found in *Marks* v. *Superior Court*, 245 Cal.App.2d 779 [54 Cal.Rptr. 169], where the court, in upholding payment of compensation for services of appointed counsel on appeal to the appellate department of the superior court, concluded (pp. 785-786): ". . . the amendments by the Legislature in each instance manifest an intention to authorize and require that court-appointed counsel be compensated in all cases where appointment of counsel is required or authorized." Such cases as *In re De La O*, 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *People* v. *Reynoso*, 64 Cal.2d 432 [50 Cal.Rptr. 468, 412 P.2d 812]; and *People* v. *Whelchel*, 255 Cal.App.2d 455, 459-462 [63 Cal.Rptr. 258], which distinguish criminal from civil proceedings for purposes of vagueness, double jeopardy, and the ability to compel the subject to testify, have only a tangential relation to the subject of compensation for court-appointed counsel.

The judgment is reversed, and the cause remanded with directions to issue the writ.

Roth, P. J., and Herndon, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 2, 1969.