THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KAROLYN ATKINSON *et al.*, Defendants.—(ELLIS E. FUQUA, Attorney,
Appellant.)

Second District No. 75-531

Opinion filed July 22, 1977.

GUILD, J., specially concurring.

Ellis E. Fuqua, of Waukegan, for appellant, *pro se.*

Jack Hoogasian, State's Attorney, of Waukegan (Phyllis J. Perko and Christine M. Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

M. R. Conzelman, of Waukegan, for *amicus curiae* Lake County Bar Ass'n.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Compensation to be awarded court appointed counsel in extraordinary circumstances for protracted defense of an indigent charged with a felony is in issue in this appeal.

Karolyn Atkinson was indicted with Ardice Heflin, and charged with murder and conspiracy in connection with the murder of Karolyn Atkinson's husband. Attorney Ellis E. Fuqua, who has practiced in Illinois for more than 27 years, was appointed by the court to defend Karolyn Atkinson. After Mrs. Atkinson's acquittal counsel submitted a bill for fees in the amount of $8662.08. The trial judge found, pursuant to section 113—3(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 113—3(c)), then in effect, that "extraordinary circumstances" existed which entitled counsel to payment in excess of the maximum of $250 provided. On recomputation of counsel's bill, the amount due was fixed at $7982.02.

The matter was then transferred to the chief judge of the nineteenth Judicial Circuit whose approval of the excess payments was required by statute. The chief judge concurred in the view of the trial judge that the circumstances were extraordinary and that the litigation was protracted so that the maximum provided in the statute could be exceeded. However, he reduced the compensation to $2766.08. Counsel appeals. The Lake County Bar Association has joined in the appeal on counsel's behalf as amicus curiae with our leave.

Counsel contends that the statute in the admittedly exceptional case before the court authorizes the award of fees sufficient to provide fair compensation and that the amount approved by the chief judge did not constitute fair compensation. He further contends that the order which allowed fees in the amount of 10 to 15% of those which reasonably could have been charged to a financially able defendant was such grossly unfair compensation that it violated the sixth amendment to the Federal Constitution guaranteeing assistance of counsel. The amicus curiae adds the additional contention that the award of fees was in violation of the fourteenth amendment because it denied the appointed attorney the equal protection of the law.

The State responds that under the statute in effect when the order was

entered, even in extraordinary circumstances counsel was entitled to only nominal additional compensation and that this measure was in fact exceeded in the order which was finally entered.

The case against Ardice Heflin was severed and tried prior to Karolyn Atkinson's jury trial. There were, however, combined hearings on various motions to suppress evidence and statements. The underlying circumstances, many of which are common to both cases, may be found in *People v. Heflin*, 40 Ill. App. 3d 635 (1976). Fuqua represented Karolyn Atkinson over a period of seven days in connection with the various combined hearings. His staff audited the Heflin trial which lasted seven days. To protect his client, he was instrumental in obtaining a vacation of judgment on the conspiracy count in the Heflin case after judgment had been entered on the jury's finding of guilt on that count as well as one of the murder counts. The trial of Karolyn Atkinson took an additional seven days with a jury verdict being returned on the eighth day. In addition, portions of approximately 63 days were spent by counsel in preparation for trial. The juxtaposition of the two trials resulted in various extraordinary measures taken by counsel which are not required in the usual murder case.

Fuqua's original statement was apparently based on rates ranging from $20 to $60 an hour for Fuqua's noncourt time and $30 to $60 an hour for his in-court time;[1] a rate of approximately $10 per hour for noncourt time and $20 an hour for in-court time for one of his office associates; and $3 an hour for all time spent by a second-year law student employed by Fuqua on a part-time basis. The figure of $7982.02 found to be due by the trial judge was based on $15 per hour for court time and $10 per hour for preparation time for all hours spent on the case by Fuqua, his associate, or his law clerk plus $91.08 of itemized expenses plus counsel's office overhead in the amount of $3823.44. (The office overhead figure was computed by dividing Fuqua's share of the overhead, exclusive of the salaries of the associate and the law clerk, by the 185½ hours Fuqua personally spent on the Atkinson case.)

The chief judge disallowed all items approved by the trial judge except for compensation for the time spent by Fuqua personally at a rate of $20 per hour for in-court time and $10 an hour for out-of-court time, totaling $2265. In addition, itemized expenses in the amount of $91.08 were awarded. The chief judge expressly found that both the original statement of attorney's fees and expenses and the recomputation

[1] For example, he charged $5 for a 15-minute phone call, $15 for half an hour working on the file, $100 for three hours preparing the closing argument, $90 for two hours examining the scene of the shooting, and $180 for a three-hour conference with his client at the jail. In addition, although he generally charged $60 an hour for in-court time, his bill included $30 for one hour in court on a motion to quash and $60 for two hours in court on the motion to sever.

approved by the trial judge were reasonable charges for the services performed but that the statute did not authorize payment for the associate and the law clerk nor appointed counsel's hourly charges as claimed. The chief judge further concluded that the hourly rate included overhead and that this could not be charged as a separate item.

To our knowledge the only ruling by the highest court in this state as to compensation that may be awarded in the extraordinary case above the maximum set in the statute is *People ex rel. Conn v. Randolph,* 35 Ill. 2d 24 (1966). The opinion was rendered prior to the inclusion of the extraordinary circumstances exception in the statute.[2] However, the Illinois Supreme Court refused on constitutional grounds to apply the strict statutory maximum when there was a showing of severe and undue hardship on appointed counsel who were forced to try a murder case 150 miles from their homes for a period of nine months and who, as sole practitioners, were on the verge of bankruptcy. Following the addition of the extraordinary circumstances exception to the statute, the amended statute was construed in *People v. Sims,* 131 Ill. App. 2d 327, 330-31 (1970). In *Sims,* the trial court had refused to authorize a fee in excess of the $250 maximum in the statute to court-appointed counsel in a murder case. The appointed counsel was one who had a substantial reputation in the practice of criminal cases and who had devoted 35 hours of court time and 10 hours of out-of-court time. There was a suggestion that a $10,000 fee in private practice would have been reasonable. The appellate court affirmed. In its holding the court analyzed various Federal cases, concluding that the fact that the charge was murder did not constitute an extraordinary circumstance and that the time spent was not unusual for a felony case. It therefore held that the representation could not be considered protracted or extraordinary.

The statute was again construed in *People v. Sanders,* 58 Ill. 2d 196 (1974). In *Sanders,* attorneys Lizak and Swanson were voluntary members of the defense of prisoners committee of the Chicago Bar Association. They were appointed to represent Sanders in defense of a murder charge. The attorneys claimed to have spent 463 hours in preparation and trial. The trial court refused to award more than the maximum of $250 plus various costs. On appeal the Supreme Court modified the judgment only to the extent of allowing $250 to each attorney. The court noted that the legislature has chosen to limit payments in excess of the maximum to cases involving protracted representation and extraordinary circumstances. It observed that it is only in a clear case

---

[2] "[I]n extraordinary circumstances, payment in excess of the limits herein stated may be made if the trial court certifies that such payment is necessary to provide fair compensation for protracted representation, and the amount of the excess payment is approved by the Chief Judge of the Circuit." Ill. Rev. Stat. 1973, ch. 38, par. 113—3(c).

of protracted litigation, such as *People ex rel. Conn*, that the exceptional circumstances are easily recognized. (58 Ill. 2d 196, 201.) The court concluded, however, that the *Sanders* representation did not fall into the exception. Here, of course, both the trial judge and the chief judge have agreed that the litigation did fall within the exception, and this finding has not been questioned. The nature of the fair compensation referred to in the statutory exception thus becomes directly relevant and is not answered by *People v. Sanders* upon which the State has principally relied.[3]

The low maximum figure in the statute clearly implies that the legislature has intended limitations on the payment of appointed counsel's attorney fees in the ordinary case. It is therefore clear that in the ordinary case the legislature did not intend that court appointed counsel be fully compensated. There appears to be a fair implication that even in cases within the statutory exception, a fee awarded to court-appointed counsel need not necessarily amount to reasonable and adequate compensation as measured by the fees of attorneys representing paying clients in similar situations. This conclusion, however, does not state a case of unconstitutionality.

■■ Counsel's argument as it relates to the sixth amendment right to counsel appears to be based on the rationale that insufficient compensation to counsel denies the accused the right to competent counsel and the further reasoning that it results in unconstitutionally shifting the burden of providing representation from the State to the individual attorney. There is some question of counsel's standing to raise the issue of competent counsel. (See *People v. Zuniga*, 31 Ill. 2d 429, 430-31 (1964).) Moreover, no authority has been cited to support counsel's sixth amendment argument on its merits. It appears to us from our research that sixth amendment claims have not been persuasive unless counsel is totally uncompensated (see *Bradshaw v. Ball*, 487 S.W.2d 294, 298 (Ky. App. 1972)) or unless the bar is required to assume the entire burden of indigent defense for nominal compensation with no provision for a public defender system. (*Cf. State ex rel. Partain v. Oakley*, 227 S.E.2d 314, 319 (W.Va. 1976).) The claim of violation of sixth amendment rights has been rejected generally in the area of appointed counsel's compensation. (See, *e.g.*, *State v. Rush*, 46 N.J. 399, 217 A.2d 441, 444, 21

---

[3] The State also cites an order which was entered in this court in *People v. Wilson*, Docket No. 74-119 (Feb. 1976), petition of Attorney Leo E. Holt. However, no opinion was published in that case. Disposition was made pursuant to Supreme Court Rule 23 (Ill. Rev. Stat. 1975, ch. 110A, par. 23). It is implicit in a Rule 23 order that no substantial question was presented by the trial court's award under the particular circumstances of the case which are not detailed in the order. The circumstances of the case before us, however, do present in our view a substantial question requiring a full decision.

A.L.R.3d 804 (1966); *State v. Mempa*, 78 Wash. 2d 530, 477 P.2d 178, 181-82 (1970); *In re Miezlish*, 387 Mich. 228, 196 N.W.2d 129, 133-34 (1972).) Under the circumstances of this case we find no violation of the sixth amendment.

■■ The equal protection argument presented by amicus curiae is also not persuasive under the facts. Such claims have been rejected, absent a showing that the burden of court appointments has been distributed unequally among members of the profession. (See, *e.g.*, *State v. Rush*, 217 A.2d 441, 446.) Generally, there is no denial of equal protection to lawyers by requiring them to perform a service which is peculiar to their profession. (See Annot., 21 A.L.R.3d 819, 824 (1968).) Here there has been no showing that counsel has been required to bear a disproportionate burden. A comprehensive public defender system is in operation which undertakes defense of most felonies. In fact, counsel has agreed that no records are maintained to evidence the frequency and intervals between appointments of counsel when the public defender is not used. He also states that no inquiry has been made to determine whether the defense of indigents has been borne equally by the lawyers in the circuit. Under these circumstances we conclude that there is no showing that counsel has been deprived of the equal protection of the law.

We then reach the question whether the reduction to $2766.08 by the chief judge amounted to an abuse of discretion.

First, we will consider whether the chief judge properly refused to allow any compensation for work on the case performed by Fuqua's associates or to reimburse Fuqua for the portion of his office overhead attributable to the Atkinson case.

The chief judge disallowed in full the claims of $1085 for services performed by the associate and $211 for the work of the law clerk. Each spent between 70 and 75 hours on the case. Much of their work was related to auditing the Heflin trial which appears to have resulted in the stipulation of the testimony of four out-of-State witnesses for the defense in the Atkinson trial. The court reasoned that the associate had not been appointed by the court and that prior permission to use the services of the associate and the law clerk had not been sought pursuant to an unpublished administrative order of the court.

■■ There is no suggestion that the services were unnecessary or that they were charged at Fuqua's time or at his rates. (Compare *United States v. Oddo*, 474 F.2d 978 (2d Cir. 1973).) We conclude that the reference to fair compensation in the statute could include circumstances under which appointed counsel can avail himself of the services of legal personnel other than himself when to do so becomes necessary to aid in the preparation for the case and where such services will be entirely consistent with appointed counsel's primary obligation to defend. The

new administrative rule of the circuit court, published shortly after the chief judge's initial ruling on Fuqua's petition, apparently also recognized this possibility because it provided for prior approval of "expenditures for investigative, court reporter or other services" aggregating more than $250.

■■ The fact that prior approval had not been sought because apparently counsel had not been advised of the prior administrative rule should not be decisive in our view. The proper inquiry would appear to be directed at the necessity for the distribution of some of the work and thus whether the court would have honored the requirement had it been requested before the work was undertaken. See *Barger v. State*, 81 Nev. 548, 407 P.2d 584, 586 (1965); *Carter v. State*, 79 Nev. 89, 378 P.2d 876, 879 (1963); *State v. Horton*, 34 N.J. 518, 170 A.2d 1, 9 (1961). See also *United States v. Aadal*, 282 F. Supp. 664, 666 (S.D. N.Y. 1968).

Moreover, since the associates' audit of the Heflin trial resulted directly in the stipulation of four out-of-State witnesses' testimony on behalf of the defendant, it could well have been found to have been a procedure which saved the time not only of primary counsel but of the court and the public. Actions of counsel which save time are generally viewed favorably in a petition for excess compensation. (See *United States v. Ursini*, 296 F. Supp. 1155, 1158-59 (D. Conn. 1968); *People v. Wilson*, 60 Misc. 2d 144, 302 N.Y.S.2d 647, 651 (County Ct. 1969); *United States v. Figueroa*, 299 F. Supp. 1394, 1395 (S.D. N.Y. 1969).) It would, of course, also follow that if appointed counsel had audited the Heflin trial personally at all times, the same result would have been accomplished. But this reasoning does not take into account the question whether there were excusable conflicts involving appointed counsel or whether in fact the use of the agents of appointed counsel would represent an actual saving in the determination of fair compensation. *Cf. United States v. Thompson*, 361 F. Supp. 879, 893-94 (D.D.C. 1973), *modified sub nom. United States v. Boggins*, 489 F.2d 1273 (D.C. Cir. 1974), *overruled on other grounds, United States v. Hunter*, 394 F. Supp. 997 (D.D.C. 1975).

■■ Under contemporary circumstances it seems unrealistic to require that work which requires somewhat less expertise and experience must be personally performed by appointed counsel in order to be compensated. It would appear that certain delegated work in a case, always remaining the responsibility of appointed counsel and done under his supervision, when found to be economic and necessary should be compensated in some manner.

On the present record, we cannot determine whether the services of the associate or the expense of the law clerk were necessary and represented a proper delegation designed to save the court's time and public funds or whether unnecessary duplication of efforts or improper delegation was

involved. However, we believe that these claims should be reviewed.

■■ The share of his office overhead which counsel attributed to the Atkinson defense (excluding any expenses for his office associate and the law student) was computed at the sum of $3823.44, based on an estimated 1500 billable hours per year. Counsel points out that his estimation of billable hours was consistent with an economic survey of legal services in Illinois conducted by the Illinois State Bar Association close in time to the billing. (See *Economics of Legal Services in Illinois*, 64 Ill.B.J. 73 (1975).) The chief judge concluded that office overhead, however, was intended to be included in the attorney's hourly rates. We agree. See, *e.g.*, "Report of the Proceedings of a Special Session of the Judicial Conference of the United States," 36 F.R.D. 277, 289-90 (1965).

We recognize that the measure of fair compensation contemplated in the exceptional case cannot be precisely defined under the statute. As we have previously noted, the Illinois Supreme Court in its most recent expression in *People v. Sanders*, 58 Ill. 2d 196, has not ruled on the measure of compensation to be awarded in extraordinary cases involving protracted litigation. *Sanders*, however, does make it clear that in nonexceptional cases appointed counsel may not expect to be compensated in the same measure as private counsel. Within the maximum provided for ordinary cases *Sanders* concludes that the statute merely "lessens the financial burden upon court-appointed counsel by providing nominal compensation within the limits of a maximum to be exceeded only under specified conditions." (58 Ill. 2d 196, 200.) It is a reasonable implication that even in the exceptional case the attorney's fees will not be measured in the same manner as in privately contracted representation.

Within this general limitation, however, the area of the court's discretion in fixing reasonable fees for appointed counsel in exceptional cases must be limited by reasonable standards. The authorities in other jurisdictions offer various approaches to the issue. There appears to be a growing tendency in many jurisdictions to allow more than nominal fees to appointed counsel, fees which are substantial payments for the services performed but not necessarily full compensation. See Annot., 18 A.L.R.3d 1074, 1109 (1968, Supp. 1976). See *Hill v. Superior Court*, 46 Cal. 2d 169, 293 P.2d 10 (1956); *State v. DeKeyser*, 29 Wisc. 2d 132, 138 N.W.2d 129 (1965); *In re Belding*, 192 Neb. 555, 222 N.W.2d 835, 836 (1974); *Abodeely v. County of Worcester*, 352 Mass. 719, 227 N.E.2d 486, 489 (1967); *State ex rel. Stephens v. District Court*, 550 P.2d 385, 388 (Mont. 1976).

In *Lindh v. O'Hara*, 325 A.2d 84, 92 n. 10, 93 (Del. 1974), the court suggested that the rational basis for "token" compensation was undermined by the establishment of a comprehensive public defender

system and indicated that counsel should be compensated at the same hourly rate as public defenders after the overhead factor has been eliminated. A number of Federal cases support the view that when extended or complex representation services are performed above the statutory Federal maximum of $1000 for a felony case payment at the maximum Federal statutory rates of $30 per hour for in-court time and $20 for out-of-court time is a measure of "fair compensation." See, *e.g.*, *United States v. Hunter*, 394 F. Supp. 997, 1001-02 (D.C. 1975). See also Annot., 9 A.L.R. Fed. 569, 599-601 (1971).

In this case for the time which appointed counsel personally spent on the case the chief judge awarded the maximum hourly charges on the basis of the guide set by the conference of chief judges of Illinois and apparently adopted for use in the Nineteenth Circuit. This guide suggested payment in exceptional cases on the basis of $20 per hour for in-court time and $10 per hour for out-of-court time. The statute under which fees were fixed in this case was amended effective October 1, 1975. (Ill. Rev. Stat. 1975, ch. 38, par. 113—3(c).) The amendment raised the statutory maximum for nonexceptional felony cases to $1000 and introduced into the statute for the first time a reference to hourly rates of "not more than $30 for each hour spent while court is in session and not more than $20 for each hour otherwise spent representing a defendant."

■■■ The amendment, which had been passed by the legislature but not yet signed by the governor, was called to the attention of the chief judge in connection with counsel's motion for a reconsideration of his fee award. The amendment has been construed to be effective as to applications made after its effective date. (*People v. Harflinger*, 45 Ill. App. 3d 479, 359 N.E.2d 861 (1977).) Here the application was made before the effective date of the amendment. However, since no hourly rates had previously been fixed in the Illinois statute, we conclude that the chief judge could properly exercise his discretion in this matter with reference to a maximum of $30 per hour for court time and $20 per hour for out-of-court time. *Cf. Luke v. County of Los Angeles*, 269 Cal. App. 2d 495, 74 Cal. Rptr, 771, 773 (1969).) The amendment is at least some indication of the legislature's most recent expression of the meaning of fair compensation even though technically the application was initiated and the trial judge made his initial determination prior to the time the new statute took effect.

Once a proper determination has been made of protracted representation within the statutory exception, the court must exercise its discretion in determining whether the maximum hourly charges should be awarded. The criteria recognized in *United States v. James*, 301 F. Supp. 107, 116 (W.D. Tex. 1969), are helpful:

"In making this determination, and thus attempting to fix a fair and reasonable fee within the statutory limits, the Court considers such recognized criteria as: the amount, character and complexity of work required; responsibilities involved; manner in which duties were performed; knowledge, skill and judgment required of and used by counsel; professional standing of counsel as reflected by length of time at the bar, experience acquired and reputation established; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; results achieved; and any other circumstances brought to the Court's attention relevant and material to a determination of a fair and reasonable fee."

■■ The trial court was expressly mindful of the historical fact that the defense of indigents at little pay was a traditional obligation of an attorney as an officer of the court. (See *People v. Sanders*, 58 Ill. 2d 196, 199-200.) However, changing conditions must also be accommodated. The increasingly heavy burden on the legal profession created by expanded rights of counsel at all critical stages of legal proceedings is an untraditional factor which expands the number of categories in which representation is now required. There has been a growth of concern for the quality of representation. Effective representation now requires experience in the particular area of law involved. The complexities of modern practice have, on the other hand, limited the areas of expertness and the number of lawyers who can be assuredly competent in a narrow field. (See *State v. Lehirondelle*, 15 Wash. App. 502, 550 P.2d 33, 34 (1976); *Luke v. County of Los Angeles*, 269 Cal. App. 2d 495, 74 Cal. Rptr. 771, 773-74 (1969); *State ex rel. Partain v. Oakley*, 227 S.E.2d 314, 321-22 (W.Va. 1976); *Abodeely v. County of Worcester*, 352 Mass. 719, 227 N.E.2d 486, 489 (1967).) Practicality requires that "fair compensation" be somewhat less than "full compensation." (See *State v. Horton*, 34 N.J. 518, 170 A.2d 1, 6-7 (1961).) The legislative expression of fair compensation should therefore not be judicially defined at more than the hourly charges the legislature has expressed. But neither should the statute be given so restrictive a meaning as to unduly impoverish a lawyer or jeopardize the survival of his practice.

■■ We therefore reverse the judgment which awarded fees in the amount of $2766.08 and remand the cause to the chief judge of the Nineteenth Judicial Circuit with directions to conduct a new hearing on counsel's petition for fees consistent with standards for evaluation of the legal services outlined in this opinion.

To summarize, in the court's discretion and applying the criteria which we have quoted from *United States v. James*, 301 F. Supp. 107, 116 (W.D. Tex. 1969), appointed counsel may be compensated for protracted

litigation not to exceed $30 per hour for in-court time and not to exceed $20 per hour for out-of-court time. There shall be no reimbursement for office overhead. The reimbursement for services performed by the associate of appointed counsel and by the paralegal are not to be excluded as a matter of law but shall be reviewed as to necessity and overall economy.

We, of course, express no view as to what particular amount the judge in the exercise of reasonable discretion may conclude is reasonable compensation.

Reversed and remanded with directions.

RECHENMACHER, P. J., concurs.


Mr. JUSTICE GUILD, specially concurring:

I concur in the above opinion, but feel it necessary that I comment briefly. The practice of law is, and I always hope that it will be, a profession. It has repeatedly been said that when one accepts a license to practice law he assumes as a part of that privilege the duty to represent the indigent upon occasion. Times have changed and the public defender represents the great majority of those unable to employ counsel. When practicing attorneys are occasionally called upon to represent those without funds, they cannot and should not expect to be reimbursed in full for their efforts. The legislature has so recognized this, as pointed out in the above opinion. Counsel herein requested $8,662.08 for fees and overhead. Section 113—3(c) of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, par. 113—3(c)) now provides that a fee not to exceed $1000 may be awarded for the defense of felony cases. The statute, as pointed out in the opinion herein, then provides that in "extraordinary circumstances" payment in excess of that amount may be made. In *People v. Sanders* (1974), 58 Ill. 2d 196, 317 N.E.2d 552, the trial court did not find "extraordinary circumstances", notwithstanding the fact that in that case counsel averred that they had spent 463 hours, as compared to 333 hours herein, for all counsel concerned. While it is true that the trial court herein did find "extraordinary circumstances," I do not feel that the legislature ever contemplated that fees anywhere in the neighborhood of those requested herein should be awarded. While this case is being reversed for re-assessment of fees, I feel that the trial court should be most circumspect in such determination, remembering that we, as lawyers, are engaged in an ancient and honorable profession that includes the defense of the indigent when called upon but not at, or near the fees which might be charged to those able to retain a private attorney.