Don BRADSHAW, Commissioner of Finance, et al., Appellants,

v.

Lewis A. BALL et al., Appellees.

Court of Appeals of Kentucky.

Sept. 22, 1972.

Rehearing Denied Dec. 15, 1972.

Ed Hancock, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellants.

Carl H. Ebert, Newport, Allen Schmitt, Louisville, for appellees.

REED, Justice.

These consolidated cases again present the intolerable condition that developed by the past failure of the state to compensate attorneys who are directed by court appointment to represent indigent criminal defendants.

This appeal resulted from these events: In late 1970 and early 1971, the presiding trial judges in certain criminal felony cases processed in the Campbell Circuit Court and in the Jefferson Circuit Court entered orders awarding fees in specified amounts to court-appointed attorneys who had represented the indigent defendants. When these attorneys attempted to collect, the Commissioner of Finance and the State Treasurer refused to approve the payment of or satisfy the court awards. The attorneys then filed actions in the Franklin Circuit Court against the Commissioner of the Department of Finance and the State Treasurer; judgment was sought to direct these state officials to approve and pay the circuit court awards. The same attorneys also filed a declaratory judgment action as individuals and as representatives of a class composed of the members of the Kentucky State Bar Association. In this proceeding the attorneys demanded a declaratory judgment that the Commonwealth was required to compensate court-appointed attorneys for professional services rendered in the representation of indigent defendants in criminal cases.

The Attorney General defended (the actions were consolidated for decisional purposes) by filing a "Response and Motion to Dismiss" wherein he contended: (a) that the Commonwealth was immune from suit under the doctrine of sovereign immunity; (b) that this court had decided that the Commonwealth could not be required to make the kind of payment demanded without legislative appropriation of funds for the purpose.

In October 1971 the Judge of the Franklin Circuit Court entered an inclusive judgment that first directed the payment of the awarded fees. This judgment then also declared that: (1) the State and Federal Constitutions required courts to appoint competent counsel for indigent criminal defendants, and that there was likewise a mandate obligating such courts to set and direct the payment of compensation to appointed counsel; (2) the cost of compensating appointed counsel for indigent defendants was an essential governmental expenditure; (3) it was the mandatory duty of the legislative and executive departments of the state government to pay essential governmental expenses; (4) the General Assembly of Kentucky had failed and neglected to provide funds with which to pay fees to court-appointed attorneys for indigent criminal defendants; (5) the burden of furnishing constitutionally necessary legal services to defendants had fallen largely upon the younger members of the Bar and that such burden had become onerous, unconscionable and was a hardship upon and deprived them of their property without due process of law; (6) it was a primary, basic and fundamental responsibility of the judiciary to provide for compensation for court-appointed attorneys for individual criminal defendants in the absence of legislative provisions therefor; (7) for the General Assembly to procrastinate further in this matter would continue to cause the loss of compensatory fees to young attorneys essential to their remaining in the profession. The Attorney General, in the name of the concerned state officials, appealed this judgment in its entirety to this court.

After entry of the judgment and while the appeal was pending, the 1972 General Assembly enacted the Kentucky Public Defender Act, KRS Chapter 31. Serious constitutional issues are presented; moreover, since one provision of the judgment involved almost explicitly called for legislative action, the subsequent enactment by the legislature of a state-wide plan to afford compensated counsel to indigent crim-

inal defendants cannot be ignored in the disposition of this appeal. Cf. Johnson v. City of Paducah, Ky., 461 S.W.2d 357 (1970).

In view of the predominating legal authority in force at the time the judgment was entered and for other reasons discussed later, we hold that the individual attorneys should not have been adjudged entitled to collect the fees awarded from the Commonwealth; nevertheless, we have also concluded that the trial judge was correct in his conclusion that the present system can no longer be continued and that current conditions require that indigent criminal defendants be afforded competent counsel who must be compensated on a reasonable basis. We do disagree, however, with the trial judge's conclusion that the ultimate responsibility to provide compensation for court-appointed attorneys in the concerned circumstance is a required function of the judicial department of government. It is our view that the duty to enforce the criminal laws rests upon the executive department, and the duty to appropriate money for the adequate enforcement of the criminal laws rests upon the legislative department.

I

In the excellent brief filed by counsel for the appellees and in a subsequently published note in 60 Ky.L.J. 710, "The Uncompensated Appointed Counsel System: A Constitutional and Social Transgression," the questionable constitutional basis and the unjust results of the present system of uncompensated appointed counsel for indigent criminal defendants are convincingly portrayed. Because of the increased crime rate and the expansion by U. S. Supreme Court decisions of new federal constitutional standards to the administration of criminal justice in the state courts, an intolerable burden has been thrust particularly upon the younger members of the legal profession. "Today, with rapidly changing concepts relating to sundry mat-

ters, such as confessions, search and seizure, joinder of defendants, right to counsel, etc., the defense of criminal charges consumes far more time than when we came to the bar. To this must be added the impact of the right of the indigent, without cost, to appeal, and to press postconviction proceedings and as well attacks in the federal courts. Further, the total demand will likely increase, for while criminal proceedings now dominate the stage, in the wings are other matters—minor offenses, juvenile delinquency, and civil commitments, areas in which counsel are now furnished but on a selective basis. We are satisfied the burden is more than the profession *alone* should shoulder, and hence we are compelled to relieve the profession of it." Those statements were made in State v. Rush, 46 N.J. 399, 217 A. 2d 441, 448, in 1966. In 1968 our court noted: "The law is now clear that all accused of crime are entitled to effective representation by counsel at all critical stages of the litigation. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, 93 A.L.R.2d 733 (1963); Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, 10 A.L.R.3d 974 (1966) and Smith v. Commonwealth, Ky., 412 S.W.2d 256 (1967)." Commonwealth, Dept. of Corrections v. Burke, Ky., 426 S.W.2d 449, 451.

The accuracy of those observations and the resounding change from conditions present when prior decisions denied compensation were proved when the Supreme Court of the United States, in June 1972, decided that indigent criminal defendants in misdemeanor cases, at least where any term of imprisonment would be inflicted, were constitutionally entitled to representation by counsel. Argesinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530.

Our opinions have repeatedly emphasized the problem and have clearly warned of the vulnerability of the present system. The last extensive consideration by this court was in Jones v. Common-

wealth, Ky., 457 S.W.2d 627 (1970). Although we continued at that time to withhold definitive action, we warned of the consequences of continued neglect. In the opinion we stated the obvious truth that both the Federal and State Constitutions generally prohibit the trial of an indigent defendant without counsel. We also, in reference to that requirement, remarked: "This means that in a case being prosecuted in a Kentucky court the state either must see that the defendant is provided counsel or it cannot proceed with the prosecution. If it should be determined that attorneys cannot constitutionally be compelled to serve as counsel without compensation, in circumstances where the burden of such service will amount to a substantial deprivation of property, it would seem that the state would be left with the choice either of not prosecuting indigents or of providing compensation for appointed counsel."

■ At the time of the Jones decision, Kentucky was one of the few states that provided no compensation for assigned counsel. No other profession in recent years has been expected to bear such a burden for services to the indigent without compensation—not even reimbursement of necessary expenses was allowed. Therefore, we conclude as did the learned trial judge that the time has arrived to declare the burden of such service a substantial deprivation of property and constitutionally infirm.

■ It is in the public interest that the administration of criminal justice proceed fairly, impartially, expeditiously and efficiently. Therefore, it appears elemental that the public interest in the enforcement of criminal laws and the constitutional right of the indigent defendant to counsel can be satisfied only by requiring the state to furnish the indigent a competent attorney whose service does not unconstitutionally deprive *him* of *his* property without just compensation.

## II

After the entry of the judgment that is the subject of the appeal, the executive and the legislative departments acted. The Kentucky Public Defender Act, KRS Chapter 31, was enacted by the 1972 General Assembly. We take judicial notice that the implementation of this legislation is still in the course of completion. The express purpose of the legislation is to provide for the establishment, maintenance and operation of a state sponsored and controlled system for the defense of indigent persons in criminal cases. $1,287,000 was appropriated for this purpose for the fiscal year 1972–1973 and a like amount for the fiscal year 1973–1974.

In the July 1972 issue of the Kentucky State Bar Journal, an article states:

"It is anticipated that this figure ($1,287,000) would be more than enough to provide competent counsel in the state and to provide reasonable compensation for the lawyers undertaking this work. Initial surveys indicate that the funding arrangement and the system adopted makes Kentucky a leader in this area and that the system adopted provides the maximum amount of flexibility for a local community to determine how the right to counsel will be provided." 36 Ky.S.B.J. No. 3, at 41, 42.

It appears, therefore, that the executive and legislative departments have finally responded to the repeated complaints of the Bar and to the warnings of the courts. What, then, should be the proper course for the judicial department to pursue in view of this response?

## III

■ Although the appellees appear to argue that the legislative enactment does not affect the disposition of this appeal, we disagree with that contention. As appellees point out in reply to the Attorney

General's argument concerning sovereign immunity, this is a declaratory judgment proceeding. Under all of our decisions in force at the time of the judgment and according to great weight of national authority, the appellees had no right to be compensated without legislative appropriation. Therefore, the subsequently enacted statute did not operate to deprive them of a right to which they had been previously adjudicated to be entitled. Requests for compensation by appointed attorneys had been frequently made and consistently rejected by this court up to that time. Indeed, while this appeal was pending another such request was rejected under the authority of Jones v. Commonwealth, supra. See Slavens v. Commonwealth, Ky., 481 S.W.2d 650 (1972). Neither are we impressed by the appellant's argument that the doctrine of sovereign immunity deprived the courts of jurisdiction to decide the questions presented. In essence, this litigation sought a judicial declaration of constitutional questions. The particular claims were mere incidents. The doctrine of sovereign immunity is designed to protect the sovereign from individual claims; an action for judicial definition of the constitutional obligations and duties of the three departments of government, which independently and coordinately comprise the sovereign entity, is surely not to be regarded as a claim against the sovereign itself. We, therefore, hold that the judicial department is authorized to make a definitive declaration in the case presented.

### IV

No better statement of the basic concept of the doctrine of the separation of powers can be made than that contained in No. 78 of The Federalist Papers. See The Federalist Papers (Rossiter edition, 1961). Here, Hamilton states:

"Whoever attentively considers the different departments of power must perceive that, in a government in which they are separated from each other, the judiciary, from the nature of its functions, will always be the least dangerous to the political rights of the Constitution; because it will be least in a capacity to annoy or injure them. The executive not only dispenses the honors but *holds the sword of the community*. The legislature not only *commands the purse but prescribes the rules by which the duties and rights of every citizen are to be regulated*. The judiciary, on the contrary, has no influence over *either the sword or the purse*; no direction either of the strength or of the wealth of the society, and can take no active resolution whatever. It may truly be said to have neither FORCE nor WILL but merely judgment; and must ultimately depend upon the aid of the executive arm even for the efficacy of its judgments." (emphasis supplied).

■ In the context presented, we are persuaded that it is the duty of the executive department to enforce the criminal laws, and it is the duty of the legislative department to appropriate sufficient funds to enforce the laws which they have enacted. The proper duty of the judiciary, in the constitutionally ideal sense, is neither to enforce laws nor appropriate money. The judiciary's reason for existence is to *adjudicate*.

■ With these principles considered, we now declare: First, the system of court-appointed uncompensated counsel does not meet the constitutional standards of either the Constitution of the United States or the Constitution of this State.

■ Second, the Kentucky Public Defender Act of 1972 appears to provide means adequate to observe the required standards, if that act is properly construed, administered, and promptly put into operation.

■ Third, in view of the foregoing conclusions, we have decided our proper

judicial course is to declare that from and after 90 days from the date of the issuance of the mandate herein, attorneys of this Commonwealth will no longer be required to accept court appointments to represent indigent criminal defendants, nor will they be subject to sanction if they decline such appointments. Attorneys will remain free, of course, to voluntarily accept appointments in such cases.

■ Fourth, the individual claims for payment asserted in these actions should not have been allowed.

The judgment appealed from is affirmed in part and reversed in part with directions to enter a new judgment consistent with this opinion.

All concur.