STATE *ex rel.* GEORGE L. PARTAIN

*v.*

HARVEY OAKLEY, *Judge of the Circuit Court of Logan County*

(No. 13692)

Decided July 23, 1976.

</div>

*Valentine, Wilson & Partain, George L. Partain* for relator.

*Chauncey H. Browning*, Attorney General, *E. Leslie Hoffman, III*, Assistant Attorney General, for respondent.

BERRY, CHIEF JUSTICE:

In this extraordinary proceeding, George L. Partain, a licensed practicing attorney in Logan County, West Virginia, seeks a writ from this Court prohibiting the Honorable Harvey Oakley, Judge of the Circuit Court of Logan County, from requiring him to represent one Sam Lambert, a defendant in criminal proceedings in the circuit court. The petitioner's obligation to represent Lambert arises out of an order of appointment in accordance with the provisions of W. Va. Code, 62-3-1, as amended.

This Court is called upon to resolve two questions raised by the matter before us. The first is the question of whether the petitioner, under the circumstances presented, will be required to represent Sam Lambert. Second, a broader and more far-reaching matter is raised by both the petition and by the amicus curiae brief filed on behalf of the West Virginia State Bar—whether this Court will exercise its rule-making power to relieve the attorneys of the State from the obligation to represent indigent defendants in criminal proceedings in the courts of this State.

The facts relating to the first issue are relatively simple. The petition, to which the respondent has demurred, indicates that Sam Lambert was charged with the misdemeanor offense of assault and battery. In response to the charge, Lambert attempted to obtain the services of a private attorney but was apparently unable to afford the minimum advance retainer of $750.00. When Lambert told the respondent of his problem, he was advised by the court to sign an affidavit in forma pauperis and, thereafter, the respondent appointed the petitioner to represent Lambert in the proceedings.

During his initial interview with his newly-acquired client, Partain discovered that Lambert was employed

full-time as a coal miner with an approximate annual income in excess of $12,000.00. In addition, Partain was told by Lambert that he owned a 1975 truck and a 1966 automobile. Following his conversations with his client, Partain filed a motion with the circuit court seeking to be relieved of the appointment on the ground that the defendant was not lawfully entitled to counsel at the expense of the State. The motion was denied by the respondent judge for the stated reason that he was without discretion to inquire beyond the pauper's affidavit.

In addition to the specific circumstances relating to the defendant Lambert's economic status, the petitioner has set out detailed facts describing his personal activities in representing indigent criminal defendants. Particularly, the petitioner says that he spends in excess of 16 percent of his professional time in the defense of court-appointed cases; that his overhead expenses allocable to time spent in representing indigent defendants exceed payments from the State for such activity; that he is required to make out-of-pocket payments in connection with appointed cases without reimbursement, and that the cumulative effect of the duties imposed upon him constitutes an undue burden on his professional time and financial integrity.

By leave of Court, the West Virginia State Bar has filed a brief amicus curiae urging the Court to relieve all practicing attorneys of the State of the responsibility of representing indigent criminal defendants under orders of appointment entered in accordance with the provisions of *W. Va. Code*, 62-3-1, *as amended.* In support of its position, the Bar has made several legal arguments relative to the economic and professional hardship which results from appointments and the alleged potential for ineffective assistance of counsel in criminal proceedings under the present system. In addition, the Bar has supplied some data descriptive of the caseload per lawyer by appointment in the various circuits in this State.

# I

We are disposed, for two reasons, to deny the petitioner relief from the responsibility of representing the defendant in accordance with the order entered below.

Sam Lambert has a vital stake in the outcome of this proceeding. Although one of the remedies sought by the petitioner is that he be relieved of the obligation of representing Lambert, that specific relief is contingent upon a finding by this Court that Lambert is not entitled to appointed counsel. So, although the action is framed in terms of the rights of the petitioner, in fact, the rights of the allegedly non-indigent defendant are in balance.

Lambert was not designated a party in this proceeding and no process has been served on him. This Court has repeatedly held that in a proceeding in prohibition, any person whose rights may be affected by the issuance of a writ by this Court must be made a party and must be given notice of the proceedings by service of the writ. This general rule is concisely stated in Syllabus Point 1 of *Kump v. McDonald,* 64 W. Va. 323, 61 S.E. 909 (1908) as follows:

> "In prohibition the rule to show cause against the issuance of the writ must go against both the tribunal to be prohibited from exercising jurisdiction of the case, and the person having adverse interest to be affected by the writ, and the writ must also be against both as parties to it."

This principle has been stated and reaffirmed in many cases by this Court. *State ex rel. St. Clair v. Marinari,* 150 W. Va. 373, 145 S.E.2d 464 (1965); *United States Steel v. Compensation Commissioner,* 138 W. Va. 506, 76 S.E.2d 474 (1953); *State ex rel. Noce v. Blankenship,* 93 W. Va. 273, 116 S.E. 524 (1923); *Armstrong v. Taylor County Court,* 15 W. Va. 190 (1879). In view of the present posture of this case, the simple fact of Lambert's absence in the proceeding is sufficient, in and of itself, to preclude the granting of prohibition on this ground.

In addition to the procedural flaw in the manner in which the case has been presented to this Court, we must deny relief based on the substantive assertion that the defendant, Sam Lambert, is not an indigent and therefore is not entitled to appointed counsel. Relying primarily on Lambert's alleged income and the fact that he apparently possesses some material resources, the petitioner asserts that Lambert is not "indigent" and that the trial court exceeded its legitimate authority in appointing counsel to represent him.

The question of determining "indigency" and thus entitlement to court-appointed counsel for persons charged with criminal offenses has been a source of considerable difficulty for the courts in this country. *See,* Annot., 51 A.L.R.3d 1108 (1973). No specific monetary guidelines can be adopted for the determination of indigency in the broad range of cases which arise. *People v. Chism,* 17 Mich. App. 196, 169 N.W.2d 192 (1969). It appears from many of the decisions of other jurisdictions that the defendant does not have to be totally without means, that is, destitute or impoverished, to be entitled to counsel. Rather, if he legitimately lacks the financial resources to employ an attorney, the court must appoint counsel to defend him. *Anaya v. Baker,* 427 F.2d 73 (10th Cir. 1970); *United States v. Cohen,* 419 F.2d 1124 (8th Cir. 1969); *In re Smiley,* 66 Cal.2d 606, 427 P.2d 179 (1967). *See also, Hardy v. United States,* 375 U.S. 277, 11 L.Ed.2d 331, 84 S.Ct. 424 (1964). The ability or inability of a defendant to afford counsel is to be determined, not simply by a superficial examination of income but, by a thorough and wide ranging examination of the defendant's total financial picture and a determination of the amount of disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations weighed against the actual cost of employing defense counsel. *Minniefield v. State,* 47 Ala. App. 699, 260 So.2d 607 (1972); *Morgan v. Rhay,* 78 Wash. 2d 116, 470 P.2d 180 (1970); *Bolds v. Bennett,* 159 N.W.2d 425 (Iowa 1968); *In re Smiley, supra.*

While the foregoing principles are largely judicial pronouncements on entitlement to appointed counsel, in this State the matter is governed by statute. The statute, *W. Va. Code*, 62-3-1, *as amended*, very closely parallels the holdings in the above-cited cases to the effect that the individual's ability to pay for private counsel determines the right to have counsel appointed at the expense of the State. The relevant part of the statute reads as follows:

> "A court of record may appoint counsel to assist an accused in criminal cases at any time upon request .... In every case where the court appoints counsel for the accused and the accused presents an affidavit *showing that he cannot pay therefor*, the court shall, by order entered of record allow an attorney so appointed a fee of not to exceed one hundred dollars in any misdemeanor case, and a fee of not to exceed two hundred dollars in any felony case." (Emphasis supplied.)

Although we have held under a similar civil forma pauperis statute, *W. Va. Code*, 59-2-1, *as amended*, that there can be no inquiry behind the forma pauperis affidavit and that the courts have a nondiscretionary duty to permit one who files such an affidavit to proceed without payment of costs, *Mars v. Luff*, 155 W. Va. 651, 186 S.E.2d 768 (1972), we need not reach the question of whether a similar rule applies to the criminal statute, either in the criminal action itself or in collateral proceedings initiated to attack the status of the defendant. However, we must recognize one critical difference between the civil statute and the criminal statute in their respective requirements concerning the nature of the affidavit. In the former case, the person seeking access to the judicial system need only *state* that "he is pecuniarily unable to pay fees or costs, or counsel fees" to be entitled to proceed without payment of the normal expenses. The criminal statute, on the other hand, requires a *"showing,"* by affidavit, of the inability to pay as a prerequisite to the appointment of counsel. Thus, *Code* 62-3-1, *as amended*, contemplates an affidavit containing more than mere conclusory language relating to the de-

fendant's economic status. Instead, the defendant must provide a showing, in sufficient detail, to permit the trial judge to consider factors, including but not limited to income, bank accounts, real or personal property owned, normal living expenses, outstanding debts, number of dependents, the seriousness of the charge and the effect of the criminal proceeding, and thereby to permit the trial court to make an independent determination on the issue of the defendant's ability to pay.

Assuming, only for the purposes of argument, that this collateral proceeding is a proper vehicle to challenge the defendant's financial ability, we are nevertheless compelled to the conclusion that the petitioner has not met the affirmative burden of proving, by competent evidence, that Sam Lambert is not entitled to appointed counsel. The facts presently before this Court are wholly inadequate to form a foundation for a finding that Lambert either is or is not able to pay for counsel. We have only the naked assertions concerning his income and possession of two motor vehicles. We do not have the benefit of the affidavit filed below nor have we been provided with other details of the defendant's overall economic condition. In this posture, the petitioner's request for relief on this ground must fail.

II

We come now to the constitutional challenge to the system of appointing counsel. It is the petitioner's contention that he is denied due process of law by the present system because he is required to provide his services without just compensation and because his private remunerative practice is substantially impaired by virtue of the large volume and time-consuming nature of criminal appointments.

The general rule, adhered to in the great majority of jurisdictions, is that it is not a violation of due process to require an attorney to give his time to the representation of indigent defendants charged with crime, even

without compensation. *MacKenzie v. Hillsborough County*, 288 So.2d 200 (Fla. 1973); *In re Meizlish*, 387 Mich. 228, 196 N.W.2d 129 (1972); *Jackson v. State*, 413 P.2d 488 (Alaska 1966); *State v. Rush*, 46 N.J. 399, 217 A.2d 441 (1966); *United States v. Dillon*, 346 F.2d 633 (9th Cir. 1965); Annot., 21 L.Ed.2d 819 (1968). *See also, Yates v. Taylor County Court*, 47 W. Va. 376, 35 S.E. 24 (1900). At least two approaches have been relied upon to justify the practice of requiring counsel to represent indigents with little or no compensation. It is reasoned that an attorney, as an officer of the court, has the duty to assist the court, without compensation, in the administration of justice and, similarly, that every attorney is deemed to have consented to pro bono appointments by virtue of having accepted his license to practice law. *Jackson v. State, supra; U.S. v. Dillon, supra; Weiner v. Fulton County*, 113 Ga. App. 343, 148 S.E.2d 143 (1966). *See also*, Canon 2, Code of Professional Responsibility. This line of thought has been criticized, 60 Ky. L.J. 710 (1972), and for over one hundred years, the States of Indiana, Iowa and Wisconsin have held that an attorney appointed by the court to represent an indigent accused has a right to just compensation from the State. *Webb v. Baird*, 6 Ind. 13 (1854); *Hall v. Washington County*, 2 Greene 473 (Iowa 1850); *Carpenter v. Dane County*, 9 Wisc. 274 (1859). More recently, a number of other states have indicated a similar view. *Bradshaw v. Ball*, 487 S.W.2d 294 (Ky. 1972); *Weiner v. Fulton County, supra*. *See also, Menin v. Menin*, 79 Misc.2d 285, 359 N.Y.S.2d 721 (1974).

We are inclined to believe that the enlightened and proper view of the requirement that attorneys provide gratuitous service to the court or service for token compensation is that such a procedure does not, in and of itself, constitute a violation of the due process clause of the Fourteenth Amendment. However, where the caseload of appointments is so large as to occupy a substantial amount of the attorney's time and thus substantially impairs his ability to engage in the remunerative practice of law, or where the attorney's costs and out-of-

pocket expenses attributable to representing indigent persons charged with crime reduce the attorney's net income from private practice to a substantial and deleterious degree, the requirements must be considered confiscatory and unconstitutional. *See, State v. Rush, supra; People v. Randolph,* 35 Ill.2d 24, 219 N.E.2d 337 (1966). It is axiomatic that an attorney's time is his stock in trade and that at some point, the impositions made on that time constitute an effective deprivation of the right to engage freely in the profession.

Based on our analysis of the information provided by the West Virginia State Bar, we are of the opinion that we have not as yet reached the stage where attorneys in this State are suffering an oppressive loss of practice and income by virtue of their representation of indigent defendants.[1] However, as we will discuss below, we are firmly convinced that there is more than adequate evidence that the burden imposed upon attorneys of this State by virtue of the present system of appointment is rapidly approaching an unacceptable and potentially unconstitutional state. We need not wait for the inevitable; rather, it is our duty to anticipate the potential for harm to the administration of justice generally and to the rights of indigent defendants and the practice of law in particular. Thus we are squarely confronted by the policy question raised by both the petition herein and the brief amicus curiae filed by the West Virginia State Bar.

---

[1]While we are in sympathy with the petitioner and those members of the Bar in Logan County who have the highest rate of appointments of any attorneys in the State, we must acknowledge that in other areas, such as the 23rd Circuit, lawyers are called upon to represent indigent criminal defendants in less than three cases per year. We note also that the information supplied by the Bar does not make a definitive showing that the time requirements of each individual case are inordinately high. We recognize the fact that many cases can be handled by an attorney in very short order, particularly where a defendant pleads guilty at an early stage of the proceedings against him.

## III

In addition to the specific relief in prohibition sought by the petitioner, we are asked to exercise our inherent authority to regulate the practice of law and to take action to relieve the petitioner and the practicing attorneys of this State of the continuing obligation to represent indigent criminal defendants by appointment. As was noted above, the petitioner is joined in this request by the West Virginia State Bar which purports to act both in the interest of the attorneys of the State and in the interest of those indigent persons for whom the system of appointment was established.

We start with the proposition that this Court clearly has the authority to deal with the question of whether attorneys will or will not be required to provide service under appointment. As the highest judicial body in this State, this Court has the inherent power to define, supervise, regulate and control the practice of law within West Virginia. This power exists both inherently and by specific recognition in our Constitution and statutes. *W. Va. State Bar v. Graziani*, ____ W. Va. ____, 200 S.E.2d 353 (1973); *W. Va. State Bar v. Earley*, 144 W. Va. 504, 109 S.E.2d 420 (1959). *See also*, Article VIII, §3 of the *Constitution of West Virginia* and, *W. Va. Code* 51-1-4a, *as amended*.

At least three other jurisdictions have, in the face of sheer necessity generated out of the burgeoning imposition on the pool of private attorneys as a result of the system of appointing counsel, exercised the inherent regulatory power to relieve the practicing bar of the responsibility of representing defendant indigents charged with crime without just compensation. *Bradshaw v. Ball, supra; State v. Green*, 470 S.W.2d 571 (Mo. 1971); *State v. Rush, supra*. Because of several factors which we will treat below, we are inclined to follow the precedent set by these decisions.

According to the data submitted by the State Bar for the period from August, 1975 until February, 1976,[2] the average attorney appointed to represent criminal defen-

dants was required to handle in excess of six cases per year. This picture is subject to considerable regional variations. So, in the Fourth, Sixth and Seventh Circuits, participating attorneys were required to handle from thirteen to sixteen cases annually, Similarly, in the Fifth, Fourteenth and Twenty-Fifth Circuits, attorneys were expected to handle eleven to twelve cases per year. At the opposite pole, in the Fifteenth, Twenty-Second and Twenty-Third Circuits the annual caseload per attorney was only two to four cases per year. The average payment per attorney, on a State-wide basis, was $164.00 per case. The maximum permissible payment by statute, regardless of the amount of work expended or the out-of-pocket expenses incurred is $200.00. *W. Va. Code,* 62-3-1, *as amended.*

The figures recited represent only the introduction of our analysis. During the period of slightly more than a decade following the decision of the United States Supreme Court in *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963), a number of factors have contributed to an escalation of almost geometric proportions of the caseload imposed upon private attorneys under the system of appointing counsel for indigent criminal defendants. Indeed, some of the most recent developments can be expected to both increase the number of cases to which attorneys are required to devote their attention as well as necessitate the expenditure of greater personal effort. The following outline of six of the more significant factors should serve to identify the complexity of the problem and indicate the need for reform.

A. During recent years, both the State and the nation have experienced a dramatic increase in the rate of criminal activity on a per capita basis.[3] Since 1972, the actual number of crimes committed in this State has risen 50.2 percent. Total crimes in West Virginia in-

---

[2]The survey upon which the Bar data is based covers only the seven-month period referred to. Many of the statistics cited are extrapolations to approximate figures for a twelve-month period.

creased 21.0 percent in 1975, when compared to 1974 figures. This translates as a 20.4 percent increase in the rate of crime. These figures represent an increase of 20.2 percent in violent crime and an increase of 21.1 percent in non-violent crime in the same time frame. Absent a concomitant increase in the number of attorneys available for appointment to represent indigent criminal defendants or a substantial reduction of the number of indigent persons charged with crime, the rise in crime rate may surely be expected to amplify the duties imposed upon the practicing bar.

B. Since *Gideon*, the right to counsel at the expense of the State has been enlarged to include representation at a number of additional stages beyond the simple trial of a case. It is now well-established that a criminal defendant is entitled to counsel at all critical stages of the proceedings against him. *United States v. Wade*, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967); *State ex rel. Riffle v. Thorn*, 153 W. Va. 76, 168 S.E.2d 810 (1969). Among the various points in the criminal proceedings during which the indigent defendant is entitled to representation by an attorney are: at a lineup or other pretrial identification procedure, *United States v. Wade, supra; State v. Moore*, ____ W. Va. ____, 212 S.E.2d 608 (1975); in the process of custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966); at a preliminary hearing if one is held, *Coleman v. Alabama*, 399 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999 (1970); *Spaulding v. Warden*, 158 W. Va. ____, 212 S.E.2d 619 (1975); at a probation revocation hearing, *Mempa v. Rhay*, 389 U.S. 128, 19 L.Ed.2d 336, 88 S.Ct. 254 (1967); *State ex rel. Strickland v. Melton*, 152 W. Va. 500, 165 S.E.2d 90 (1968); and during a hearing for revocation of parole, *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L.Ed.2d 656, 93 S.Ct. 1756 (1973); *Dobbs v. Wallace*, 157 W. Va. 405, 201 S.E.2d 914 (1974). The result of the broadened entitlement to counsel at the various identified stages is to

[3]The figures cited are from *Crime in West Virginia—1975* (1976), a report compiled by the W. Va. Department of Public Safety.

either require an attorney who is appointed to represent a defendant on a criminal charge to undertake a long-term responsibility or, to require several appointments as a result of a single criminal event. In either case, the effect is an increased stress on the limited pool of man-power upon which the courts may call for legal services.

C. Beyond those additional stages identified above for which attorneys are called upon to represent indigent defendants, there are several new areas of criminal or crime-related proceedings[4] in which court appointments may be made. In particular, incarcerated indigents are entitled to counsel to pursue habeas corpus proceedings, *W. Va. Code,* 53-4A-4; *as amended,* indigent, persons charged with misdemeanors have a right to appointed counsel, *Argersinger v. Hamlin,* 407 U.S. 25, 32 L.Ed.2d 530, 92 S.Ct. 2006 (1972)[5]; *State v. Blosser,* W. Va., 207 S.E.2d 186 (1974); criminal defendants are entitled to counsel on appeal, *Douglas v. California,* 372 U.S. 353, 9 L.Ed.2d 811, 83 S.Ct. 814 (1963); *c.f., State ex rel. Banach v. Boles,* 147 W. Va. 850, 131 S.E.2d 722 (1963); and juveniles are entitled to appointed counsel to represent them in delinquency proceedings, *Re Gault,* 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1967); *W. Va. Code,* 49-5-10, *as amended.* Although it does not fall technically in the nature to a criminal or crime-related matter, in proceedings for the involuntary commitment of the mentally infirm, many equivalent protections are afforded the person who is subjected to such proceedings. So, it has been held that one faced with involuntary commitment

---

[4] We take notice of the fact that there has recently been established in West Virginia a State-wide legal service program to provide civil legal services to indigent persons. Numerous attorneys of the State have agreed to participate in this program on a voluntary basis and receive reduced compensation for their activities.

[5] For discussions of the potentially awesome impact on the legal system caused by the sheer volume of required appointments in misdemeanor cases, *see,* Duke, *The Right to Appointed Counsel: Argersinger and Beyond,* 12 AM. CRIME. L. REV. 601 (1975); and, Rossman, *The Scope of the Sixth Amendment: Who is a Criminal Defendant?,* 12 AM. CRIM. L. REV. 633 (1975).

is entitled to the appointment of a legal representative. *State ex rel. Hawks v. Lazaro,* 157 W. Va. 417, 202 S.E.2d 109 (1974); *W. Va. Code,* 27-5-4(c), *as amended.*

All of the foregoing obligations, while expressive of extremely valuable protections and fundamental rights of indigent persons in our community, add to the public service required of attorneys in this State.

D. At one time, representing the indigent criminal defendant was a relatively simple and straightforward matter. While there were some minor technical aspects attendent to a criminal prosecution, for all intents and purposes the attorney's duty was simply to conduct a defense at trial with the normal measure of competency. However, contemporary jurisprudence has introduced a greater degree of complexity into the representation of criminal defendants. Today, the defense lawyer in a criminal case is confronted with a myriad of fine points with which he must deal. The modern criminal lawyer must engage in complicated and detailed pre-trial discovery, analysis of involved issues of search and seizure, occasional scientific jury selection, elaborate rules relating to conspiracy, and in addition he must be conversant with the forensic sciences, medicine, psychiatry and other disciplines unrelated to the practice of law. Not only is the lawyer currently required to deal with these convoluted and diverse legal and non-legal matters but the prospects for additional intricacies in the future are almost inescapable.

E. Perhaps the most important factor which operates to compound the problems of attorneys dealing with the increased complexity in representing criminal defendants is the fact that these attorneys are held to a strict standard of performance on behalf of the criminal defendants. In *State v. Thomas,* 157 W. Va. 640, 203 S.E.2d 445 (1974) we held that in order to effectively represent an accused, an attorney must exhibit the "normal and customary degree of skills possessed by attorneys who are reasonably knowledgeable in criminal law."[6] Thus, in the interest of the constitutional rights of criminal defendants, appointed counsel must demonstrate, by his

conduct on behalf of the defendant, a particular knowledge of and skill in the area of criminal law. The operative effect of this requirement is twofold. First, those attorneys who are subject to appointment by court order and who normally practice little or no criminal law will be required to spend a substantial amount of additional time acquainting themselves with the procedural and substantive aspects of criminal law which, as was noted previously, are progressively becoming more complicated and detailed. Second, there will be a number of attorneys who, by virtue of the lack of experience and practical exposure to criminal proceedings combined with the inability, in a reasonable time, to prepare themselves adequately, will be unavailable under any circumstances to accept criminal appointments. Necessarily, the absence of these practitioners from the usable population of attorneys shifts the burden to those others who possess the requisite degree of skill to competently act to represent indigent persons accused of crime. Both of these factors are important considerations in guiding this Court to its policy determination.

F. Finally, we notice two trends which, in practical operation, exacerbate the problems of the appointed counsel system. First, we acknowledge an ongoing movement towards specialization in the practice of law. Second, more and more attorneys are turning to government service or service in fields which do not actively involve them in the practice of law. These two trends further serve to reduce the manpower available for representation of criminal defendants and thus increase the stress on the limited resources otherwise available.

To this point, we have discussed the problems in the system of appointment of counsel largely in terms of the interests and duties of the attorneys of the State. It is

---

[6]This ruling, in part, aligns West Virginia with the thinking of The American Bar Association on the responsibilities of defense counsel. *See,* ABA Project, *Standards for Criminal Justice, Standards Relating to Providing Defense Services* (Final approved draft 1968).

suggested in the briefs filed before this Court that the system, as it currently exists, does not guarantee adequate representation of those persons for whose benefit it was created. We acknowledge that the appointment system has no built-in guarantees of effective assistance and in some aspects may have the potential for frustrating the delivery of effective defense services. Some of the problem areas are untimeliness of appointment, inadequate or nonexistent investigative and defense support resources, the indiscriminate nature of the appointment system and the absence of economic incentive to the attorneys appointed. Many writers have identified these and other deficiencies in the traditional system. *See, e.g.,* Benner, *Tokenism and the American Indigent: Some Perspectives on Defense Services,* 12 AM. CRIM. L. REV. 667 (1975); Friloux, *Equal Justice Under the Law: A Myth Not A Reality,* 12 AM. CRIM. L. REV. 691 (1975); Comment, 43 U. CIN. L. REV. 185 (1974); LaFrance, *Criminal Defense Systems for the Poor,* 50 NOTRE DAME LAWYER 41 (1974); *Carter v. Bordenkircher,* 159 W. Va. _____, 226 S.E.2d 711 (1976). These flaws will certainly be aggravated by the growing caseload and increased time requirements imposed upon appointed attorneys. Under these circumstances, the indigent criminal defendant may become the victim rather than the beneficiary of the present method of providing defense counsel.

While we are unwilling to conclude that the present scheme for appointing counsel to represent indigent persons results in ineffective counsel, per se, because we must make that determination on an *ad hoc* basis, *State v. Thomas, supra,* we do consider the inadequacies and potential unreliability of the system of considerable and persuasive value to us in the resolution of the policy question before us.

On the foregoing analysis, we are of the opinion that the interests of justice, and the corollary concern for the practicing attorneys of this State and the indigent persons charged with crime require us to take remedial

action. The only remaining question is the nature of the remedy.

## IV

There are many ways to alleviate the burden which is imposed upon the attorneys under the present system of appointment of counsel and simultaneously to assure adequate representation of indigent criminal defendants. Alternatives include the adoption of a public defender system, modification of the scheme of appointing counsel to assure adequate compensation and a proper level of professional skill, a hybrid of these two approaches or any number of variations. *See,* Goldberg, *Defender Systems of the Future: The New National Standards,* 12 AM. CRIM. L. REV. 709 (1975), and LaFrance, *Criminal Defense Systems for the Poor, supra.* It is the opinion of this Court that the ultimate decision concerning the specifics of providing a defense system in accordance with the concepts expressed in this opinion is appropriately left to the Legislature of the State. That body is best suited to weigh the many variables and to tailor the system to the particular needs of this State. In addition, it is the sole prerogative of the Legislature to appropriate the requisite funds to maintain the system so established. West Virginia Constitution, Art. X, §3. With deference to the legislative process, then, we conclude that the appropriate remedy is to order only that the lawyers of this State may no longer be required to accept appointments as in the past.

In order to allow the Legislature to take the necessary action to modify or replace the present system of appointing attorneys to represent indigents, this Court will forego the entry of any order under its inherent power until the First day of July, 1977, at which time such action will be taken by this Court as is mandated by the circumstances.

We are confident that the Legislature, given the full opportunity to carefully scrutinize all of the probative aspects of the need for a revised delivery system for

legal counsel for indigent defendants, will wisely exercise its prerogative to assure the continuing administration of the system of criminal justice in West Virginia.

On all of the foregoing, the writ prayed for is denied and relief to alleviate the burden now existing will be postponed and no order under the inherent power of this Court will be entered until the First day of July, 1977.

*Writ denied.*