388 S.E.2d 301

**Paula M. CUNNINGHAM**

v.

**The Honorable A.L. SOMMERVILLE, Jr., and the Honorable Danny O. Cline, Judges of the Fourteenth Judicial Circuit Court of West Virginia; William C. Martin, Prosecuting Attorney of Braxton County, West Virginia; and Richard A. Facemire, Prosecuting Attorney of Clay County, West Virginia.**

No. 19273.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

**428**

Gary W. Hart, Stephen R. Crislip, Thomas E. Potter, Jackson & Kelly, Charleston, for Paula M. Cunningham.

A.L. Sommerville, Jr., Chief Judge of the 14th Jud. Circuit, Webster Springs, pro se.

Danny O. Cline, Judge of the 14th Jud. Circuit, Sutton, pro se.

William C. Martin, Pros. Atty., Sutton, pro se.

Richard A. Facemire, Pros. Atty., Clay, pro se.

McHUGH, Justice.

In this original jurisdiction proceeding the petitioner, Paula M. Cunningham, seeks a writ of prohibition against the respondents, the two judges of the Fourteenth Judicial Circuit of the State of West Virginia, to preclude them from appointing the petitioner to represent indigent criminal defendants until such time, if ever, that the petitioner engages in the practice of law separate from her employment full-time as house counsel for a business corporation.[1] We conclude that the writ of prohibition should be awarded.

### I

The petitioner, Paula M. Cunningham, is an attorney employed by Go–Mart, Inc. ("Go–Mart"), as its general counsel. She has held that position since August 1, 1987. Go–Mart's principal office is in Braxton County, West Virginia. As full-time general counsel for Go–Mart and its related corporations, the petitioner has no separate private law practice. As a condition of the petitioner's employment by Go–Mart, the petitioner is prohibited from having outside employment commitments.

---

1. The petitioner also named as respondents the prosecuting attorneys for Braxton and Clay Counties, two of the four counties in the Four-

teenth Judicial Circuit. The other two counties in that circuit are Webster and Gilmer Counties.

The petitioner is a salaried employee of Go–Mart and as such is subject to Go–Mart's personnel regulations which include a requirement that she work a minimum of thirty-nine hours per week in order to maintain her medical and life insurance coverages. She normally averages fifty hours per week of work and sometimes works as many as seventy-five hours per week. Go–Mart provides no part-time salaried positions.

As general counsel for Go–Mart, the petitioner has no private secretary. She utilizes the services of a Go–Mart employee who is permitted to engage in secretarial work related to Go–Mart's interests only.

All of the petitioner's office space, equipment and supplies are furnished by Go–Mart. The petitioner possesses no criminal reference books, state or regional reporters or other research materials relating to criminal law. Her files and computer data bank are the property of Go–Mart and can be accessed by other Go–Mart employees. Accordingly, she has no facilities whereby she could ensure client confidentiality for any client other than Go–Mart or its related corporations.

Because the petitioner does not maintain a separate private law practice, she maintains no insurance coverage for legal malpractice except for her representation of Go–Mart.

The petitioner is a resident of Braxton County and is a former assistant prosecuting attorney.

Since June 14, 1989, the Circuit Court of Braxton and Clay Counties ("the trial court") has appointed the petitioner to represent forty-three indigent criminal defendants charged with seventy-five crimes in Braxton and Clay Counties of West Virginia. Most of the crimes are misdemeanors, but some are felonies, and there is one juvenile proceeding.

At a subsequent hearing on the petitioner's motion to be relieved as counsel in these matters, the trial court indicated that it was sympathetic to the petitioner's position, and stated: "Personally, I don't think that you [the petitioner] should be required to accept appointments, but I believe that under the ruling [*State ex rel. Facemire v. Sommerville*, No. 19047 (W.Va. June 7, 1989) ], as I understand it, that I am obligated to make the appointments." The trial court also stated at the hearing: "[T]he reason that people are required to accept appointments is because they possess a license to practice law." Consequently, the trial court denied the petitioner's motion to be relieved as counsel.

The petitioner thereafter brought this prohibition proceeding to bar enforcement of the trial court's ruling.

## II

At the outset this Court observes that the trial court has misunderstood our decisions in *State ex rel. Facemire v. Sommerville*, No. 19047 (W.Va. June 7, 1989) (unpublished order), and *Jewell v. Maynard*, 181 W.Va. 571, 383 S.E.2d 536 (1989), *as modified on reh'g*, upon which *Facemire* relied. We did not conclude in either of those cases that each person licensed to practice law in this state is required to accept criminal appointments. Rather, in *Facemire* the holding was that the trial court ordinarily must follow the attorney-appointment sequence set forth in *W.Va. Code*, 29–21–9 [1989] for representation of indigents in criminal, juvenile and other eligible proceedings.[2] *W.Va.Code*, 29–21–9(c) [1989] authorizes, ordinarily as a last resort, the appointment of one or more "qualified private attorneys[.]"[3] Under *Facemire*, "[w]hen local lawyers are no longer available ..., the respondents, considering travel requirements, should appoint lawyers from out-of-circuit." *Facemire* required these appointments to be made "following the safeguards and procedures described herein and more fully in *Jewell* [.]" Syllabus point 6 of *Jewell*, relying upon *W.Va.Code*, 29–21–9 [1989], authorizes out-of-circuit appointments, as long as

---

**2.** The very similar predecessor to *W.Va.Code*, 29–21–9 [1989] was *W.Va.Code*, 29–21–10 [1981].

**3.** Qualified private attorneys so appointed "shall be treated as panel attorneys for that specific case." *W.Va.Code*, 29–21–9(c) [1989].

travel distances for the lawyers appointed are not unreasonable.[4]

In addition to the travel-distance consideration, the appointment of "qualified private attorneys" from inside or outside the circuit in question is subject to Rule 6.2 of the *West Virginia Rules of Professional Conduct* (1989). In pertinent part this rule, entitled "Accepting Appointments," provides:

> A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
>
> (a) representing the client is likely to result in violation of the Rules of Professional Conduct or other law;
>
> (b) representing the client is likely to result in an unreasonable financial burden on the lawyer[.]

The "comment" to this rule contains, *inter alia,* these statements:

> For good cause a lawyer may seek to decline an appointment to represent a person who cannot afford to retain counsel or whose cause is unpopular. Good cause exists if the lawyer could not handle the matter competently, see Rule 1.1, ... A lawyer may also seek to decline an appointment if acceptance would be unreasonably burdensome, for example, when it would impose a financial sacrifice so great as to be unjust.

Rule 1.1 of the *West Virginia Rules of Professional Conduct* (1989), mentioned in the just-quoted comment to Rule 6.2, provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

■ The petitioner argues that requiring her to accept court appointments "is likely to result in an unreasonable financial burden" on her, within the meaning of Rule 6.2(b) of the *West Virginia Rules of Professional Conduct* (1989), because she likely would be dismissed from her full-time job with her current employer, Go–Mart, Inc., as a result of her being unable to fulfill the duties of such job while representing indigents. We are of the opinion that the petitioner's "belief" as to this likelihood is manifestly "reasonable." *See* 1 G. Hazard & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 494.1 (Supp.1989). We are also of the opinion that compelling the petitioner's acceptance of the court appointments, in light of the resulting virtually certain loss of her full-time employment as house counsel, "would impose a financial sacrifice so great as to be unjust." *W. Va. Rules of Professional Conduct* Rule 6.2 comment (1989). Therefore, this Court concludes that, under such rule, the petitioner has shown "good cause" for avoiding the court appointments.[5]

■ Accordingly, our holding is that house counsel employed on a full-time basis by a business corporation which forbids such counsel from engaging in the separate practice of law may, under Rule 6.2(b) of the *West Virginia Rules of Professional*

---

**4.** The primary issue in *Jewell,* as stated in *Facemire,* was whether West Virginia's indigent-defense statutes were deficient in light of state and federal constitutional provisions providing an individual with a right to effective assistance of counsel in certain types of cases but also prohibiting the taking of property (of appointed lawyers) without due process. In *Jewell* we concluded that such statutes were constitutionally deficient but, for the most part, stayed imposition of a remedy until July 1, 1990, to give the legislature an opportunity to address the problem.

**5.** Prior to January 1, 1989, the then effective *West Virginia Code of Professional Responsibility* contained an "Ethical Consideration" which stated in relevant part: "When a lawyer is ap-

pointed by a court ... to undertake representation of a person unable to obtain counsel, whether for financial or other reasons, he [or she] should not seek to be excused from undertaking the representation except for compelling reasons." EC 2–29 [1983]. A "compelling reason" in this context would be a financial sacrifice in the form of a virtually certain loss of full-time employment. *Cf.* syl. pt. 1, *Jewell v. Maynard,* 181 W.Va. 571, 383 S.E.2d 536 (1989), *as modified on reh'g,* and syl. pt. 3, *State ex rel. Partain v. Oakley,* 159 W.Va. 805, 227 S.E.2d 314 (1976) (requirement of court-appointed service is considered confiscatory and an unconstitutional taking of property where such service substantially impairs an appointed attorney's ability to engage in remunerative practice of law).

*Conduct* (1989), avoid an appointment by a tribunal to represent an indigent in a criminal or other eligible proceeding, on the ground that the representation "is likely to result in an unreasonable financial burden" on the lawyer. The same rule would also apply, for example, to a lawyer employed on a full-time basis by a governmental entity which forbids such lawyer from engaging in the separate practice of law.

Our holding, stated above, is dispositive of the issue of whether the petitioner is entitled to the writ of prohibition. We believe, however, that a brief discussion of Rule 6.2(a) of the *West Virginia Rules of Professional Conduct* (1989) is appropriate to provide some guidance to the circuit courts in this state when confronted with the need to appoint *"qualified* private attorneys" in a criminal or other eligible proceeding. *W. Va. Code,* 29–21–9(c) [1989] (emphasis added).

As indicated previously in this opinion, Rule 6.2(a) of the *West Virginia Rules of Professional Conduct* (1989) authorizes a lawyer to avoid an appointment when the representation is likely to result in a violation of such rules, such as Rule 1.1 on competent representation. In the context of an appointment to represent an indigent in a criminal proceeding, the lawyer appointed need not necessarily have criminal trial experience in order to provide competent representation. The court making the appointment should, however, allow sufficient time for study and preparation by the lawyer and should maturely consider appointing a more experienced co-counsel to assist an inexperienced lawyer appointed in the case.[6]

At this point it is important to recognize that the analysis of the competency of a lawyer for the purpose of deciding whether a lawyer should be appointed to represent an indigent in a criminal case is to be distinguished from the analysis of the competency of a lawyer for the purpose of deciding whether a lawyer who has been appointed to represent an indigent in a criminal case has rendered the constitutionally required effective assistance of counsel. This distinction was made, for example, in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In that case a defendant in a criminal case who was convicted alleged on appeal that counsel appointed to represent him at trial had rendered ineffective assistance in defense of the charges. Rather than showing any actual ineffectiveness at trial, the defendant argued that it should be presumed that the assistance was ineffective because of allegedly inadequate preparation time for counsel (twenty-five days). The Supreme Court of the United States rejected the argument that there should be a presumption of inadequate preparation time when, as in that case, the facts are essentially uncontroverted and there is only one narrow issue for the jury. The court also rejected the argument that appointed counsel's inexperience buttressed the presumption of ineffective assistance:

> A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problem a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.
> . . . .

---

**6.** *See, e.g., W.Va. Rules of Professional Conduct* Rule 1.1 comment (1989), which, in pertinent part, states:

*Legal Knowledge and Skill*
In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances, the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.

That conclusion [no presumption of inadequate preparation time] is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial. Every experienced criminal defense attorney once tried his first criminal case.... The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation.

*Cronic,* 466 U.S. at 665, 104 S.Ct. at 2050, 80 L.Ed.2d at 672. The court noted, however:

We consider in this case only the commands of the Constitution. We do not pass on the wisdom or propriety of appointing inexperienced counsel in a case such as this. It is entirely possible that many courts should exercise their supervisory powers to take greater precautions to ensure that counsel in serious criminal cases are qualified. We address not what is prudent or appropriate, but only what is constitutionally compelled.

*Id.* at 665 n. 38, 104 S.Ct. at 2050 n. 38, 80 L.Ed.2d at 672 n. 38 (citations omitted).[7]

With respect to the *wisdom* of appointing inexperienced counsel, this Court, in *Jewell v. Maynard,* 181 W.Va. 571, 383 S.E.2d 536 (1989), *as modified on reh'g,* rejected one of the recommendations of the master appointed by us to address, among other things, the shortage of counsel available for appointment, especially in rural counties:

One of the remedies recommended by the master is that all practicing lawyers be required to accept appointments. Although in an ideal world this expedient would help distribute the burden of appointed cases equitably, the master's remedy runs contrary to the great weight of authority: Service to the client overshadows all other considerations, including the equitable distribution of the ethical burdens of professional status. 'A lawyer who "doesn't have his heart in it" can lose a jury trial in a hurry.'

*Id.* 181 W.Va. at 580, 383 S.E.2d at 545 (citation omitted). A similar point was expressed in *State ex rel. Partain v. Oakley,* 159 W.Va. 805, 227 S.E.2d 314 (1976):

[T]here will be a number of attorneys who, by virtue of the lack of experience and practical exposure to criminal proceedings combined with the inability, in a reasonable time, to prepare themselves adequately, will be unavailable under any circumstances to accept criminal appointments. Necessarily, the absence of these practitioners from the usable population of attorneys shifts the burden to those others who possess the requisite degree of skill to competently act to represent indigent persons accused of crime.

*Id.* 159 W.Va. at 820, 227 S.E.2d at 322.

These pronouncements by this Court are generally consistent with the American Bar Association's *Standards for Criminal Justice* on "Providing Defense Services." According to those *Standards,* "[t]he objective in providing counsel should be to assure that quality legal representation is afforded to all persons eligible for counsel[.]" 1 *Standards for Criminal Justice* § 5-1.1 (2d ed. Supp.1986). "[L]awyers and judges are unanimous in acknowledging that not every lawyer licensed to practice is actually able to try a case in court effectively." *Id.* § 4-1.5 commentary. Therefore, these *Standards,* emphasiz-

---

7. *Cf. Jewell v. Maynard,* 181 W.Va. 571, 577, 383 S.E.2d 536, 542 (1989), *as modified on reh'g:* Criminal law is a demanding, rapidly changing and complex specialty. And the constitutional right to counsel is not satisfied by the compelled or random appointment of a specialist in real estate law. 'Simply because one has a license to practice law does not make one competent to practice in every area of the law.' (citation omitted) At first blush this language about appointment of a specialist in real estate

law appears to be inconsistent with *Cronic. Jewell,* however, did not involve a claim of ineffective assistance of counsel but, rather, a recommendation by a court-appointed master that all lawyers be required to accept appointments in criminal cases. Therefore, *Jewell* involved the wisdom, not the constitutionality, of appointing a lawyer inexperienced in litigation, including criminal litigation, to represent an indigent in a criminal case.

ing advocacy skills, recommend that courts appointing lawyers to represent indigents in criminal and other eligible proceedings should normally select counsel who has some trial experience, even if it is limited to civil trial experience:

> Assignments should be distributed as widely as possible among the qualified members of the bar. Every lawyer licensed to practice law in the jurisdiction, experienced and active in trial practice, and familiar with the practice and procedure of the criminal courts should be included in the roster of attorneys from which assignments are made.

1 *Standards for Criminal Justice* § 5–2.2 (2d ed. Supp.1986). The commentary to this *Standard* notes that "the standard rejects the notion that every member of the bar admitted to practice in a jurisdiction should be required to provide representation." [8]

Other jurisdictions have applied these *Standards. See, e.g., Stern v. County Court,* 773 P.2d 1074 (Colo.1989) (en banc) (attorney experienced in civil, but not criminal, *litigation* is not ordinarily permitted to decline appointment in criminal case; attorney must not only allege but show his or her incompetence in criminal law, and if the same is shown, trial court must decide whether attorney is capable of becoming competent on his or her own or with assistance of co-counsel); *Wood v. Superior Court,* 690 P.2d 1225 (Alaska 1984) (attorney with *trial* experience, including some criminal trial experience, must show incom-

petence in criminal cases at the present time), *overruled on another point, DeLisio v. Alaska Superior Court,* 740 P.2d 437, 439, 444 (Alaska 1987). *Cf. Cunningham v. Superior Court,* 177 Cal.App.3d 336, 349–51, 222 Cal.Rptr. 854, 862–64 (1986) (denial of equal protection to require only *trial* lawyers to provide *uncompensated* representation of indigents in paternity cases), *as modified on denial of reh'g, review denied* (Cal. May 8, 1986).

■ In short, a lawyer seeking to avoid an appointment under *West Virginia Rules of Professional Conduct* Rule 6.2(a) (1989), based upon his or her alleged incompetence in the particular area of the law, must show such incompetence and inability, in a reasonable time, to become competent through study and preparation. Even if such a showing is made, the court may, in its sound discretion, appoint a more experienced attorney as co-counsel.

As discussed above, the petitioner in the present case has shown that she is entitled to avoid the appointments under Rule 6.2(b) of the *West Virginia Rules of Professional Conduct* (1989), as the appointments would "likely result in an unreasonable financial burden" upon her. Accordingly, the writ of prohibition barring enforcement of the trial court's ruling is awarded. [9]

Writ awarded.

> A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a

---

**8.** *Contra:* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1216 (1972) (all members of District of Columbia bar are subject to appointment, where only misdemeanor cases are involved and there is a great shortage of lawyers to represent indigent accused; recognizing, though, that more experienced co-counsel should be appointed in some cases).

**9.** Due to our resolution of this case based upon Rule 6.2(b) of the *West Virginia Rules of Professional Conduct* (1989), we need not decide whether the performance of duties by house counsel for a business corporation constitutes the "active practice of law" as defined in Rule 4.0(c) of the *Rules for Admission to the Practice of Law,* promulgated by this Court, effective on March 1, 1989. *W.Va.Code,* "Court Rules" vol., at 424 (1989). For the purpose of those rules,

the "active practice of law" means "practice on a substantial basis motivated by a desire to earn a livelihood from that practice." At pages 417–18 of the "Court Rules" volume to the *W.Va.Code* (1989), is set forth the "Definition of the Practice of Law," as promulgated by this Court in 1947 and last amended in 1961. That definition, promulgated primarily for the purpose of precluding the unauthorized practice of law, contains this statement: "In general, one is deemed to be practicing law whenever he [,she] or it furnishes to another advice or service under circumstances which imply the possession or use of legal knowledge and skill." For purposes of this opinion we have assumed that the petitioner's duties as house counsel for Go–Mart constitute the "practice of law" and the "active practice of law."

lawyer who is appointed as counsel for an unrepresented person. See also Rule 6.2.